IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| KENTUCKY BOURBON DISTILLERS, LTD. dba The Willett Distillery,<br><br>                       Plaintiff,<br><br>        v.<br><br>SHAAN, INC., NIKKI PATEL, individually, KEVIN PATEL, individually, and JOHN DOE, individually,<br><br>                       Defendants. | Civil Action No.: _____<br><br>**COMPLAINT AND JURY DEMAND** |

**VERIFIED COMPLAINT**

Plaintiff Kentucky Bourbon Distillers, Ltd., doing business as The Willett Distillery ("Plaintiff"), by and through their undersigned counsel, allege as follows for this Verified Complaint against Defendant Shaan, Inc. ("SHAAN") Nikki Patel, Kevin Patel, and John Doe (collectively, "Defendants"):

**PRELIMINARY STATEMENT**

"All bourbon is whiskey, but not all whiskey is bourbon." *Maker's Mark v. Diageo North America, et al*, Nos. 10-5508/5586/5819 (6th Cir. May 9, 2012). The cultivation of a quality whiskey and spirits requires acumen only acquired through generations of hard work and skill. Whiskey, like other distilled spirits, begins as a fermentable mash, composed of water and grains or other fermentable ingredients. *Id*. The mash is heated and then cooled, yeast is introduced to ferment the sugars in the mash, and the yeast turns the sugars into alcohol and carbon dioxide. *Id*. This now-alcoholic liquid is then distilled to concentrate the alcohol. *Id*. (citing GARY REGAN & MARDEE HAIDIN REGAN, THE BOURBON COMPANION 32-33 (1998)). The

1

composition of the mash, and the aging, treating, and flavoring of the distilled alcohol, determine the flavor, color, and character of the distilled spirit. *Id*. In the case of bourbon, the corn-based mash and aging in charred new oak barrels impart a distinct mellow flavor and caramel color. *Id*. In summary, cultivating a quality spirits, such as whiskey or bourbon, requires effort and perfection that spans generations.

To date, distillers compete intensely on flavor, but also through branding and marketing; the history of bourbon, in particular, illustrates why strong branding and differentiation is important in the distilled spirits market. *Id*. For example, during the 19th century, pioneering Kentucky distillers like Jacob Beam, Elijah Craig, E.H. Taylor, Jr., and Robert Samuels transformed frontier whiskey into what we now know as bourbon, "the only spirit distinctive to the United States." *Heaven Hill Distilleries, Inc. v. Log Still Distilling, LLC*, 575 F. Supp. 3d 785, 795 (W.D. Ky. 2021) (citing S. Res. No. 110-294, 153 CONG. REC. S10822 (2007)). Their legacies include iconic bourbons branded with their names even today. *Id*.

Among their ranks is Thompson "Willett," who in 1936, began distilling bourbon on the Willett family farm in Kentucky just three years after the repeal of the prohibition in the United States. The Willett bourbon legacy is far from new. It began centuries ago in 1674 when Edward Willett went to London to learn the pewter trade as an apprentice to Daniel Mason. At the age of twenty-three, Edward received his mark and became a pewterer. From those humble roots, he and his many children migrated to the United State and started their own successful bourbon brand bearing his name—Willett. To this day, WILLETT® bourbon is distilled by Edward Willett's descendants and sold by Plaintiff throughout the world.

Plaintiff offers attractive products wrapped in a compelling legacy of hard work, family values, and distillery excellence in the alcoholic beverages industry. But that story is associated

with Plaintiff's bourbon, not Defendants'. Despite being aware of the historic significance of the WILLETT® bourbon legacy, Defendants set out to "subtly" tie a product it sells to Plaintiff's legacy, reputation, and goodwill through misleading and authorized use of a colorable imitation of Plaintiff's trademark. Federal trademark laws bar Defendants from using a colorable imitation of Plaintiff's trademarks and goodwill to sell spirits that compete with the WILLETT® brand. Defendants are welcome to distill their own bourbon and promote their own brand, but not by executing a marketing strategy that leverages Plaintiff's WILLETT® brand without proper authority. Defendants' actions infringe on Plaintiff's trademark rights, scorn U.S. federal and state laws, and undoubtedly constitute unfair competition and deceptive trade practices. Moreover, Defendants do a disservice to the history and tradition of bourbon.

## THE PARTIES

1. Plaintiff is a corporation organized and existing under the laws of the Commonwealth of Kentucky, having its principal place of business at 1869 Loretto Road, Bardstown, Kentucky 40004.

2. Upon information and belief, Defendant SHAAN is a corporation organized and existing under the laws of the State of Tennessee, having its principal place at 5033 Murfreesboro Road, La Vergne, Tennessee 37086-2706.

3. Upon information and belief, Nikki Patel is an individual operating as the owner, agent, or employee of Defendant SHAAN.

4. Upon information and belief, Kevin Patel is an individual operating as the owner, agent, or employee of Defendant SHAAN.

5. Upon information and belief, John Doe is an unknown individual operating as an owner, agent, or employee of Defendant SHAAN.

6. Upon information and belief, Defendants Nikki Patel, Kevin Patel, and John Doe also have ownership interest in REYAN INC. d/b/a/ Legacy Wine and Spirits located 720 Legacy Ct, Smyrna, TN 37167.

7. Upon information and belief, Defendants' colorable imitation of Plaintiff's Mark was and is being sold in various stores, including La Vergne Beverage Depot located at 5033 Murfreesboro Rd., La Vergne, Tennessee 37086. A correct and accurate photo of Defendant's colorable imitation of Plaintiff's mark being offered for sale at La Vergne Beverage Depot located at 5033 Murfreesboro Rd., La Vergne, Tennessee 37086, is attached hereto as **Exhibit A**, and is shown below:



## **NATURE OF THE ACTION**

8. This is an action for: (I) federal trademark infringement under 15 U.S.C. §§ 1501, *et seq*. (hereinafter the "Lanham Act"); (II) federal unfair competition and false designation of origin under the Lanham Act; (III) trademark infringement under Tennessee law; (IV) deceptive trade practices under the Tennessee Consumer Protection Act; and (V) unfair competition under Tennessee common law.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiff's claims (Counts I and II) pursuant to 15 U.S.C. § 1121 (actions arising out of the Lanham Act); 28 U.S.C. §1331 (federal jurisdiction); and 28 U.S.C. § 1338 (general jurisdiction for trademark actions). This Court has supplemental jurisdiction over the remaining claims (Counts III, IV, and V) under 28 U.S.C. § 1367 because those claims are so related to the federal claims asserted in Counts I and II that they form part of the same case or controversy.

10. This Court also has subject matter jurisdiction over the entire case under 28 U.S.C. § 1332 because there is complete diversity between both Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants because Defendant SHAAN has its principal location in the State of Tennessee; Defendants transacted business in the State of Tennessee; Defendants contracted to supply goods in the State of Tennessee; Defendants committed tortious acts or omissions causing an injury in the State of Tennessee; and Defendants caused tortious injury in the State of Tennessee by an act or omission outside the State of Tennessee in connection with its regular business activities in the State of Tennessee.

12. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(1), (b)(2) & (c)(2) because the claims alleged in the Complaint arose in this District,

this Court has personal jurisdiction over Defendants in this District, and because Defendants may be found and/or reside in this District.

## GENERAL ALLEGATIONS

### Plaintiff's Generational Tradition and History

13. Plaintiff is a private, family-owned and operated company that produces high quality bourbon and rye whiskey.

14. Tradition and family values have fueled Plaintiff's trade through generations. In the spring of 1936, Thompson Willett founded the Willett Distillery. The distillery was erected near the Willett family farm, which had been purchased by Lambert Willett, Thompson's father. Upon completion, in the spring of 1937, the Willett Distillery produced its first batch of Kentucky Bourbon Whiskey, which amounted to 300 bushels (approx. 30 barrels) on March 17, 1937, St. Patrick's Day. The newly barreled Bourbon was stored in one of the family's rickhouses, each capable of storing between 4,000 and 5,000 whiskey barrels. The rickhouses were built on some of the highest ground in the county, assuring that a fresh breeze would aid in the maturation of the Whiskey.

15. Today, the Plaintiff has capitalized on its storied history, and has grown into the epitome of excellence in curating bourbon, whiskeys, and spirits. Plaintiff's bourbon, whiskeys, and spirits, and alcoholic beverages are sold throughout the world.

16. As a result of Plaintiff's long, extensive, and widespread use of the distinctive WILLETT® Mark, consumer across the United States, and the world, have come to identify the WILLETT® Mark with the goods and services emanating excluding from Plaintiff.

17. Plaintiff has expended millions of dollars to promote and advertise Plaintiff's Mark throughout the world in print and in broadcast media, and on the Internet, including through various websites.

18.     Plaintiff uses the WILLETT® Mark in a wide variety of ways to advertise and promote the goods and services offered by Plaintiff, including using the WILLETT® Mark in print ads, television and radio ads, digital and social media, on brochures, and in other publications, marketing materials, advertisements, labels, and signage, and has spent millions of dollars advertising, marketing, and promoting its goods and services under the WILLETT® Mark since at least October 1970.

19.     Plaintiff's primary website is located at http://www.kentuckybourbonwhiskey.com.

**Plaintiff's Mark**

20.     Plaintiff selected, adopted, and has used the WILLETT® mark ("Plaintiff's Mark") in commerce since at least as early as October 1970 in connection with: (a) whiskey, distilled spirits, potable spirits, spirits, spirits and liqueurs, and alcoholic beverages (hereinafter "Plaintiff's Goods"); (b) a wide variety of promotional goods, including clothing and drinkware, and (c) in advertising and rendering a wide variety of services, including retail store services selling alcoholic beverages, clothing, and drinkware, as well as distillery tours, information sessions, and restaurant/bar services ("Plaintiff's Services").

21.     On April 20, 2008, Plaintiff filed a federal trademark registration application for Plaintiff's Mark and was issued U.S. Registration No. 3,614,912 (the "912 Registration") on May 5, 2009. A correct and accurate copy of the registration certificate is attached as **Exhibit B**.

22.     The '912 Registration is now incontestable pursuant to 15 U.S.C. § 1065, providing conclusive evidence of Plaintiff's ownership of Plaintiff's Mark and of Plaintiff's exclusive right to use Plaintiff's Mark in commerce.

23.     Plaintiff's Mark has been used continuously in interstate commerce since the inception of its use by Plaintiff, and is still in use as of the date of this filing.

24. Plaintiff advertises and sells Plaintiff's Goods under Plaintiff's Mark throughout the world, including the United States generally, and Tennessee, in particular, including via a web site accessible via the URL www.willettdistillery.com.

25. On account of its long and continuous use of Plaintiff's Mark and substantial advertising and sales of Plaintiff's Goods and Plaintiff's Services, Plaintiff has established considerable rights in Plaintiff's Mark.

26. Through its promotional efforts, business conduct, and continuous use of Plaintiff's Mark for more than fifty (50) years, Plaintiff has developed and maintained customers throughout the world, including the United States and Tennessee, in particular. Plaintiff's Mark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff and the high quality of Plaintiff's Goods and Plaintiff's Services.

### **Defendants' Activities**

27. Upon information and belief, Defendants have, without authorization, license, or consent by Plaintiff, used a colorable imitation of Plaintiff's Mark in association with goods and services related to Plaintiff's Goods. In particular, Defendants have, without Plaintiff's permission, applied a colorable imitation of Plaintiff's Mark to numerous containers of alcoholic beverages and, in particular, bottles of bourbon advertised, offered for sale, and sold at a retail outlet operated by Defendants. Defendants' colorable imitation of Plaintiff's Mark includes a label on Defendants' product that reads: "I WILL DRINK WILLET HERE OR THERE I WILL DRINK OLD KIRK EVERYWHERE." A correct and accurate copy of Defendants' unauthorized colorable imitation of Plaintiff's Mark is attached as **Exhibit C** and is shown below:



28. Upon information and belief, Nikki Patel, Kevin Patel, and John Doe are owners, agents, or employees of Defendant SHAAN.

29. Upon information and belief, Defendant John Doe participated in and/or authorized or directed the unauthorized and infringing use of Plaintiff's Mark for the benefit of Defendants, and with actual and constructive notice of Plaintiff's superior rights in Plaintiff's Mark.

30. Plaintiff actively polices Plaintiff's Mark, and only recently became aware of Defendants' use in August 2022. See **Exhibit A**.

31. Defendants' colorable imitation of Plaintiff's Mark violates 27 C.F.R. § 5.41(a) because it covers the product labeling in its entirety, including but not limited to, the Surgeon General's warning "**GOVERNMENT WARNING:** (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."

32. Defendants' use of a colorable imitation of Plaintiff's Mark has caused and/or will likely cause confusion in the marketplace with Plaintiff's Mark. Further, Defendants' activities are likely to confuse consumers into believing that Plaintiff sponsors, licenses, approves or is otherwise affiliated with or benefits from the Defendants' goods and services.

33. Moreover, Defendants' colorable imitation of Plaintiff's Mark includes and references to Theodor Seuss Geisel a/k/a/ Dr. Seuss cartoon characters, including characters from Dr. Seuss' book "The Cat in the Hat." Defendants' use of Dr. Seuss cartoons in its colorable imitation of Plaintiff's Mark is ostensibly an infringement of the copyright in the Dr. Seuss "The Cat in the Hat" character and further tarnish Plaintiff's reputation and goodwill by consuming consumers into believing that Plaintiff sponsors, licenses, approves or is otherwise affiliated with or benefits from Dr. Seuss, his books, his characters and symbols.

34. Defendants' unauthorized use of a colorable imitation of Plaintiff's Mark has caused and/or will likely cause confusion, mistake, or deception to consumers with respect to the association (or lack thereof) of Defendants to Plaintiff, or as to the origin, sponsorship, association, or approval of Defendants' goods and services by Plaintiff.

35. Defendants' use of a colorable imitation of Plaintiff's Mark in commercial advertising and promotion misrepresents the nature, characteristics, qualities, and origin of Defendants' goods and services.

36. Plaintiff has been, and continues to be, injured by Defendants' unauthorized and unlawful use of a colorable imitation of Plaintiff's Mark. Further, Defendants' activities have caused, and continues to cause, irreparable harm to Plaintiff and Plaintiff's goodwill and reputation.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
**(15 U.S.C. § 1114)**

37. Plaintiff repeats and reasserts each of the foregoing allegations of this Complaint as if fully set forth herein.

38. As stated above, the U.S. Patent and Trademark Office determined that Plaintiff's Mark met all requirements for federal registration and issued the '912 Registration for Plaintiff's Mark, which registration is now incontestable.

39. Defendants had constructive notice of the Plaintiff's '912 Registration pursuant to 15 U.S.C. § 1072 since at least as early as May 5, 2009, and prior to commencing the activities complained of herein.

40. Defendants are not affiliated, connected with, endorsed, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of Defendants' activities.

41. Defendants knowing and intentional unauthorized adoption and use of a colorable imitation of Plaintiff's Mark in association with its goods and services is likely to cause, or has caused, consumers to mistakenly believe that: (a) Defendants are affiliated with Plaintiff; (b) Defendants business is sponsored or approved by Plaintiff; and/or (c) Defendants are otherwise associated with or has obtained permission from Plaintiff to use a term confusingly similar to Plaintiff's Mark in connection with the provision of goods and services by Defendants.

42. By engaging in the unauthorized activities described above, Defendants have infringed Plaintiff's rights in Plaintiff's Mark in violation of 15 U.S. C. § 1114.

43. Upon information and belief, Defendants' activities were, and remain, willful and intentional, with full notice of Plaintiff's superior rights in Plaintiff's Mark.

44. Defendants' willful and intentional acts of infringement have caused and are causing great and irreparable injury and damage to Plaintiff's Mark, as well as Plaintiff's business,

goodwill and reputation, in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury and damage.

45. Plaintiff is entitled to injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement, unfair competition, deceptive trade practices, and false designation of origin and, after trial, to recover any damages proven to have been caused by reason of Defendants' aforementioned acts, and to recover enhanced damages based on Defendants' willful, intentional, reckless and/or grossly negligent acts.

46. Plaintiff is also entitled to recover Defendants' profits as well as actual damages suffered by Plaintiff in an amount to be determined at trial, plus treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

47. Plaintiff repeats and reasserts each of the foregoing allegations of this Complaint as if fully set forth herein.

48. Defendants, by and through its knowing and intentional unauthorized adoption and use of a term confusingly similar to Plaintiff's Mark , have and continues to falsely designate its goods and services as being derived from or affiliated with Plaintiff

49. Defendants' use of a term confusingly similar to Plaintiff's Mark is likely to cause, or has caused, consumers to mistakenly believe that: (a) Defendants are affiliated with Plaintiff; (b) Defendants' goods or services are sponsored or approved by Plaintiff; or (c) Defendants are otherwise associated with or has obtained permission from Plaintiff to use a term confusingly similar to Plaintiff's Mark in connection with the promotion and sale of goods and services by Defendants.

50. By engaging in the unauthorized activities described above, Defendants have made, and continue to make, false, deceptive, and misleading statements constituting false representations and false advertising in connection with the sale of goods or services distributed in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. Defendants' activities were, and remain, willful and intentional, with full notice of Plaintiff's superior rights in Plaintiff's Mark for Plaintiff's Goods and Plaintiff's Services.

52. Defendants' willful and intentional acts of infringement, unfair competition, false advertising, and false designation of origin, have caused and are causing great and irreparable injury and damage to Plaintiff's business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury and damage.

53. Plaintiff is entitled to injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement, unfair competition, deceptive trade practices, and false designation of origin and, after trial to recover any damages proven to have been caused by reason of Defendants' aforementioned acts, and to recover enhanced damages based on Defendants willful, intentional, reckless and/or grossly negligent acts.

54. Plaintiff is also entitled to recover its attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117.

## COUNT III
## TENESSEE TRADEMARK INFRINGEMENT
**(TENN. CODE ANN. § 47-25-512)**

55. Plaintiff repeats and reasserts each of the foregoing allegations of this Complaint as if fully set forth herein.

56. Plaintiff has made widespread and continuous use of Plaintiff's Mark, including in the State of Tennessee.

57. Defendants have offered for sale, advertised, marketed, and/or promoted in commerce in the State of Tennessee goods and services using a term confusingly similar to Plaintiff's Mark without Plaintiff's authorization.

58. Defendants' activities constitute use, without consent or authorization of Plaintiff, of a reproduction, counterfeit, copy, and/or colorable imitation of Plaintiff's Mark in connection with the sale, distribution, offering for sale, and/or advertising of goods or services, which is likely to cause confusion or mistake or to deceive as to the source or origin of the goods or services.

59. Defendants' activities represent reproducing, making copying, and/or colorable imitations of Plaintiff's Mark in connection and applying the same to advertisements used or intended to be used upon or in connection with the sale or other distribution within Tennessee of the Defendants' goods and services in violation of Tenn. Code Ann. § 47-25-512.

60. Plaintiff is entitled to injunctive relief against Defendants, and anyone acting in concert with Defendants to restrain further acts of infringement, unfair competition, deceptive trade practices, false advertisement, false designation of origin and, after trial to recover any damages proven to have been caused by reason of Defendants' aforementioned acts, and to recover enhanced damages based on Defendants' willful, intentional, reckless and/or grossly negligent acts.

61. Defendants' actions have causes injury to Plaintiff in the form of lost sales and revenue, lost business reputation, consumer confusion, and Plaintiff will continue to be damaged by Defendants' infringement.

62. Plaintiff is therefore entitled to injunctive relief, damages, and costs, as well as enhanced damages and reasonable attorneys' fees.

## COUNT IV
## DECEPTIVE TRADE PRACTICES PURSUANT TO THE TENNESSEE CONSUMER PROTECTION ACT
### (TENN. CODE ANN § 47-18-104)

63. Plaintiff repeats and reasserts each of the foregoing allegations of this Complaint as if fully set forth herein.

64. The aforementioned acts of Defendants consists deceptive trade practices in violation of the Tenn. Code Ann § 47-18-104.

65. Defendants have caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, affiliation, connection, association, or certification of Defendants' goods or services.

66. The acts of Defendants were and are committed willfully, with full knowledge of Plaintiff's rights, and with the intention of deceiving and misleading the public and causing harm to Plaintiff.

67. The unfair and deceptive trade practices have caused injury to Plaintiff in the form of lost sales and revenue, lost business reputation, consumer confusion, and Plaintiff will continue to be damages by Defendants' infringement, if not enjoined

68. Plaintiff is therefore entitled to injunctive relief, damages, and costs, as well as, enhanced damages and reasonable attorneys' fees.

## COUNT V
## UNJUST ENRICHMENT
### (Tennessee Common Law)

69. Plaintiff repeats and reasserts each of the foregoing allegations of this Complaint as if fully set forth herein.

70. Due to Defendants' unauthorized use of Plaintiff's Mark, Defendants have gained a financial benefit from its infringing activities form their willful and deliberate use of Plaintiff's Mark.

71. Defendants have taken advantage of the goodwill associated with Plaintiff and Plaintiff's Mark, making it inequitable for Defendants to retain the benefit without payment of its value.

72. The aforementioned act of Defendants constitute unjust enrichment of Defendants at the expense of Plaintiff in violation of Tennessee common law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants providing as follows:

1. Pursuant to 15 U.S.C. § 1116, issue a temporary restraining order, preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendants and any principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns of Defendants, and all those in privity, concert, or participation with Defendants, from:

    a) imitating, copying, duplicating, or otherwise making unauthorized use of Plaintiff's Mark or any version thereof, in connection with the description, marketing, promotion, advertising, sale, or offer for sale of any goods or services, as a trade name, domain name, or otherwise;

    b) using any false designation of origin or description that can or is likely to lead the public, or individual members thereof, to believe mistakenly that any product or service advertised, promoted, offered or sold by Defendants is sponsored, endorsed, connected with, approved, or authorized by Plaintiff;

    c) causing likelihood of confusion or injury to Plaintiff's business reputation and to the distinctiveness of the WILLETT® mark;

    d) engaging in any other activity constituting unfair competition or infringement of the WILLETT® mark;

    e) destroying or otherwise disposing of any infringing products or advertisements, or any documents pertaining to them or their acquisition or to any sales or transfer heretofore made; and

17

f) assisting, aiding, or abetting any person or entity in engaging or performing any activity enumerated in paragraphs (a) through (e) above.

2. Finding that Defendants committed acts of trademark infringement, unfair competition, deceptive trade practices, and unjust enrichment as alleged in this Complaint;

3. Entering judgment against Defendant SHAAN and in favor of Plaintiff on all counts;

4. Entering judgment individually and personally against Defendants Nikki Patel, Kevin Patel, John Doe and in favor of Plaintiff on all counts;

5. Finding that Defendants' activities were in all respects conducted willfully and for profit;

6. Ordering that Defendants, its officers, members, agents, servants, employees and attorneys, and those in active concert or participation with them or any of them, be permanently enjoined and restrained from using the Plaintiff's Mark in any manner whatsoever, including in connection with providing goods and services related to Plaintiff's Goods;

7. Ordering Defendants to deliver up to Plaintiff for destruction, any and all instructions, advertisements, or products that relate to the unlawful activities complained of herein;

8. Ordering Defendants under 15 U.S.C § 1117 to account to Plaintiff for any and all profits derived in connection with the unlawful activities complained of herein, and that Defendants disgorge any such profits and pay all damages sustained by Plaintiff by reason of Defendants' actions complained herein;

9. Awarding Plaintiff's costs and attorneys' fees;

10. Awarding punitive and/or treble damages against Defendants;

11. Awarding Plaintiff both pre-judgment and post-judgment interest on each and every damage award;

12. Finding under 15 U.S.C. § 1117 that Defendants conduct has been willful, and awarding Plaintiff reasonable attorneys' fees, costs, and disbursements of this civil action; and,

13. Awarding any other damages or relief that this Court deems just and proper.

Respectfully submitted,

/s/ *Joshua L. Burgener*
Joshua L. Burgener
**DICKINSON WRIGHT PLLC**
424 Church St. Suite 800
Nashville, TN 37219
Telephone: (614) 244-6538
Facsimile: (844) 670-6009
jburgener@dickinsonwright.com

Andrew Dorisio (pro hac pending)
**DICKINSON WRIGHT PLLC**
300 W. Vine St. Suite 1700
Lexington, KY 40507
Telephone: (859) 899-8740
Facsimile: (844) 670-6009
adorisio@dickinsonwright.com

*Attorneys for Plaintiff Kentucky Bourbon Distillers, Ltd.*

## Jury Demand

Plaintiff Kentucky Bourbon Distillers, Ltd. requests a trial by jury on all issues and claims so triable.

## VERIFICATION OF COMPLAINT

STATE OF KENTUCKY  )
                   )
__Nelson__ COUNTY  )

I, __Kristy Craig__, as __VP Admin__ of Kentucky Bourbon Distillers, Ltd., d/b/a The Willett Distillery!, being duly sworn, verify this Complaint. I have read the foregoing Complaint and state that the information contained therein is true and correct.

Signature: ___[signed] Kristy___

Sworn to and subscribed before me this the __27__ day of October, 2022.

___[signed] Becky a Reynolds___
NOTARY PUBLIC

My Commission Expires: __11/16/24__

[Notary Seal: Becky A. Reynolds, ID # KYNP18517, NOTARY PUBLIC, STATE AT LARGE, KENTUCKY, EXP. 11/16/24]

4877-7214-8794 v5 [103305-2]